# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

DENISE J. CHILD,

        Plaintiff,

vs.

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

        Defendant.

No.  C22-2071-LTS-MAR

**MEMORANDUM
OPINION AND ORDER**

## I.     INTRODUCTION

This case is before me on cross-motions for summary judgment.  Defendant Unum Life Insurance Company of America (Unum) has filed a motion (Doc. 37) for summary judgment as to all counts, to which plaintiff Denise Child (Child) has filed a resistance (Doc. 46) and Unum has filed a reply (Doc. 49).  Child has filed a motion (Doc. 38)[1] for summary judgment on the limited issues of coverage of benefits and wrongful post claim underwriting under her breach of contract claim, to which Unum has filed a resistance (Doc. 45) and Child has filed a reply (Doc. 48).  Oral argument is not necessary.  *See* Local Rule 7(c).

## II.     PROCEDURAL HISTORY

On November 4, 2022, Child commenced an action against Unum in the Iowa District Court for Black Hawk County.  Doc. 2.  On November 29, 2022, Unum removed the case to this court based on diversity jurisdiction under 28 U.S.C. § 1332.  *See* Doc. 1.  Child asserts the following claims: breach of contract (Count I), bad faith (Count II),

---

[1] Child filed her brief in support of her motion at Doc. 42.

and fraudulent misrepresentation (Count III).  Trial is scheduled to begin August 5, 2024.

### III.    SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case.  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, "the substantive law will identify which facts are material."  *Id.*  Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not.  *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question."  *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248).  Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial."  *Anderson*, 477 U.S. at 248–49.  The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue."  *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323).  Once

2

the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996). On cross motions for summary judgment, the "court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed. 1998).

## IV.    RELEVANT FACTS[2]

The following facts are undisputed unless otherwise noted. In 1980, Child was involved in a car accident that left her paralyzed with quadriplegia. Doc. 46-1 at 1. As

---

[2] This section is limited to facts related to Unum's motion for summary judgment.

such, she is confined to a wheelchair and requires substantial assistance with activities of daily living (ADLs) such as bathing, dressing, toileting, transferring, continence, eating and ambulating/mobility. *Id.* at 1-2. She has never recovered from her loss of ADLs. *Id.* at 2.

In 2003, Child's employer, Area Education Agency 267 (AEA 267) offered its employees enrollment in a long-term care (LTC) plan (the Policy) through Unum. *Id.* at 2. The Policy was sold under guaranteed issue although the parties dispute what this means. Unum states that according to the terms of LTC coverage secured by AEA 267, if an individual elected to enroll for LTC benefits greater than $6,000 per month or for an unlimited duration, the individual was required to complete an application, undergo medical underwriting and provide evidence of insurability. *Id.* at 6. However, if an individual elected to enroll for LTC benefits less than or equal to $6,000 per month, the individual was not required to complete an application or provide evidence of insurability but simply had to elect the level of coverage and duration by completing the Benefit Election Form. *Id.* The Benefit Election Form contained a statement immediately above the individual's signature line that required the individual to acknowledge that the individual had read and understood that loss of ADLs or Severe Cognitive Impairment must occur after the effective date of coverage. *Id.* at 8. The Commissioner of Insurance for the State of Iowa approved this policy form (TQGLTC95) on January 29, 1997.[3] *Id.* at 11.

Child interprets guaranteed issue as meaning guaranteed coverage. Doc. 49-1 at 4. Unum states that while coverage under the Policy was guaranteed for individuals who enrolled for LTC benefits less than or equal to $6,000 per month, the individual would still have to meet the requirements of the Policy to obtain benefits. *Id.* at 4-5.

_____

[3] Child notes there is no evidence that other documents were approved, including the Benefit Election Form and, in any event, argues this "stamp of approval" is meaningless and has no force or effect based on the arguments she is raising. Doc. 46-1 at 11.

4

The parties dispute the role that AEA 267 played in explaining the Policy's coverages and exclusions to employees, including Child. Child asserts that Unum designated AEA 267 as plan administrator, plan fiduciary and enrollment agent for the Policy. Doc. 46-1 at 13. Unum notes that the part of the Policy that Child relies on, identifying AEA 267 as the Plan Administrator, is entitled "ERISA – Additional Summary Plan Description Information." Doc. 49-1 at 13. Because the Employee Retirement Income Security Act of 1974 (ERISA) does not apply to the Policy, as AEA 267 is a governmental entity and the plan a governmental plan, *see* 29 U.S.C. § 1003(b)(1), Unum contends the ERISA provisions are not applicable. *Id.*

With regard to whether AEA 267 could act as an agent for Unum, Unum acknowledges that AEA 267 explained coverages and exclusions to its employees but disputes that it was an agent. Doc. 46-1 at 3-4. The parties agree that the Policy states: "For all purposes of this Policy, the Policyholder acts on its own behalf or as the employees' agent. Under no circumstances will the Policyholder be deemed Unum's agent." *Id.* at 13.

Unum states that the role of the plan administrator was to: (1) provide employees with an enrollment kit on or prior to their eligibility date, (2) ensure employees return the completed forms by the due date and (3) review the Benefit Election Form to ensure (a) it was signed and dated, (b) the benefit choices were clearly identified, (c) the employee's address is correct, (d) the employee's date of birth was included, (e) the employee's social security number was included, and (f) the employee's date of hire was included. Doc. 49-1 at 13. The enrollment kit included an Outline of Coverage, Plan Highlights/Schedule of Benefits, Rate Sheets, and a Benefit Election Form. Doc. 46-1 at 5-6. The Outline of Coverage included the following Existing Loss provision:

> If you have an existing loss of ADLs or Severe Cognitive Impairment on your effective date of coverage, that loss or impairment will only be eligible for coverage if you recover from that loss or impairment. We must receive acceptable proof of your ADL or cognitive recovery, such as a Physician's statement *or* an assessment.

5

*Id.* at 6. Child contends this provision is misplaced because Iowa law requires any condition or limitation to benefit eligibility to be in a separate heading in the Outline of Coverage. *Id.* at 5-6. This language is not contained within the preexisting condition exclusion or within the "Delay of Coverage" or "Limitation on Benefits" sections of the Policy. *Id.* at 14. Rather, it is under a section entitled "When You are Eligible for a Monthly Benefit." Doc. 49-1 at 12.

In 2003, Child enrolled for coverage under the Policy by completing a Benefit Election Form. Child enrolled for LTC benefits at the monthly level of $5,000 and a facility benefit duration of six years. Doc. 46-1 at 6. As such, she was not required to complete an application, provide evidence of insurability or go through medical underwriting. *Id.* at 6-7. Child understood that although coverage under the Policy was guaranteed, she would still have to meet the requirements of the Policy to obtain benefits.[4] *Id.*

Part of the parties' disagreement concerning whether Child is entitled to LTC benefits involves her communications with individuals at AEA 267 in charge of administering the plan. Child noticed the following language in the Benefit Election Form:

> By signing below you signify that you have read and understand that loss of Activities of Daily Living (ADL) or Severe Cognitive Impairment must occur after your effective date of coverage under this Long Term Care plan in order to be covered and that certain limitations and exclusions apply to your coverage. This information is contained in your kit.

*Id.* at 8. Child states her employer assured her that her preexisting condition would not

---

[4] Child clarifies that she agrees only to the extent there were specifically delineated provisions in the Policy such as Who May Apply, When Coverage Becomes Effective, When Coverage is Delayed and Exclusions and Limitations. Doc. 46-1 at 7. She argues that none of these bar her claim. Additionally, she notes benefit eligibility under the Policy requires a need for assistance with two or more ADLs, an assessment performed by a LHP, a plan of care and a certification of chronic illness. *Id.* She acknowledges these conditions apply to her as well.

be a bar to benefits. Doc. 49-1 at 6-7. Specifically, Unum notes that Child spoke with Ralph Bartelt, Head of the Human Resource Department of AEA 267. Child testified that Bartelt told her: "That's right, Denise. This is good. This is going to work for you" and "This will be a good thing for you." *Id.* at 7. In a declaration, Bartelt does not confirm that he had any direct conversations with Child. *Id.* Betty Beauregard, an accounting specialist with AEA 267, also encouraged Child to enroll in the policy. Doc. 46-1 at 4. Unum notes that Beauregard does not recall any specifics from these conversations. Doc. 49-1 at 7.

Child asserts that she also contacted Unum through a telephone number on the enrollment form about this issue and received the same assurances that her preexisting condition would not exclude her from benefit coverage because the LTC policy and certificate were being issued as guaranteed issue.[5] Doc. 46-1 at 8-10. Child states she made one call prior to enrolling in the Policy and a second call after signing the Benefit Election Form and within the 30-day window to withdraw enrollment under the Certificate of Insurance. *Id.* at 8, 14. Unum notes that Child testified her recollection of one or perhaps two calls was "fuzzy." *Id.* at 9. Child asserts she recalls the pertinent parts of the first call but does not recall every detail. *Id.* Child testified her recollection of the first call was as follows:

> What I told them was that I had a health condition that required – that required daily cares, daily caregivers already, and I said I'm guarantee issue and I'm staying under the amount required for having to go through underwriting, so I don't have to answer any medical questions, but I already have caregiving needs, and does this statement apply to me since I am guarantee issue? And the answer was: "no, ma'am, it does not."

*Id.* at 10. Child did not recall disclosing her use of a wheelchair in either call. *Id.* at 10,

---

[5] Unum disputes that Child made any calls to Unum but states that it included Child's allegations for purposes of its motion for summary judgment, arguing that even if true, they do not create a material dispute of fact on any of Child's causes of action. *See* Doc. 37-2 at 5, n. 2.

7

16. Child testified she recalls the following conversation about "preexisting conditions" during her second call:

> I asked them if those statements – From what – From what I recall, I asked them something about: "Do preexisting conditions or health conditions matter when it comes to benefits in the future?
>
> And she said that it was guarantee issue "and your benefits will not – or your benefits will not be affected by anything."
>
> And she actually said – she said something about, which I didn't – it didn't really matter to me, she said something about: "Once you have had 60 days or two years behind you, none of that would matter anyway."

*Id.* at 16.

Child paid her monthly premiums on the policy and filed a claim for LTC benefits in 2021. In the claim form, Child acknowledged she needed assistance with her ADLs of bathing, dressing, toileting, transferring, continence, eating and ambulating/mobility beginning in 1982.[6] *Id.* at 17. In a phone call with a Benefits Specialist assigned to the claim, Child stated she had required hands-on assistance with her ADLs of bathing, dressing, toileting, transferring and continence since 1980 and occasionally needed assistance with eating. *Id.* at 18. Child confirmed her ADL needs had not changed since 1980. *Id.*

Unum denied Child's claim based on an "existing loss of ADLs" on her effective date of coverage. *Id.* at 18-20. It did not contact AEA to determine what representations were made to Child. Doc. 49-1 at 12. Child asserts that the Benefits Specialist told her that her existing loss of ADLs was a preexisting condition and Child asserts that Unum denied Child's claim due to her preexisting physical and medical condition. *Id.* at 18-20.

---

[6] Child testified that the year on her claim form was incorrect and that she has needed assistance with her ADLs since February 6, 1980. Doc. 46-1 at 17.

Child appealed and in a letter dated April 1, 2022, Unum stated that Child "confirmed she has needed ADL assistance for bathing, dressing, toileting, transferring, continence, and occasionally eating" since 1980 and also "confirmed she has never had any periods of ADL recovery and has required the same level of assistance since the 1980s." *Id.* at 21. The letter quoted the "existing loss of ADLs" provision in the Policy and Benefit Election Form and confirmed that the pre-existing condition exclusion did not apply to the decision on the claim.[7] *Id.* It affirmed the denial of her claim.

## V. DISCUSSION

### A. Unum's Motion for Summary Judgment

Unum seeks summary judgment on each of Child's claims: breach of contract (Count I), first party bad faith (Count II) and fraudulent misrepresentation (Count III). I will address each in turn.

#### 1. Count I – Breach of Contract

Unum argues it is entitled to summary judgment on Child's breach of contract claim because: (1) the Policy clearly and unambiguously states that any existing loss of ADLs prior to the effective date of coverage is not covered under the Policy unless the insured recovers from that loss and (2) Child suffered a loss of her ADLs (the same loss she claims under the Policy) long before her effective date of coverage and never recovered from that loss. Child argues the Policy conflicts with Iowa statutes and the

---

[7] Child notes the letter (1) failed to address or respond to her assertion that the Existing Loss provision was an improper reliance upon a preexisting condition to deny her claim, (2) failed to properly investigate Child's claim that at the time of issuance of the LTC policy, Child had been assured by Unum and her employer that guaranteed issuance of coverage meant her preexisting condition before her effective date of coverage would not stop her from obtaining benefits and (3) failed to address or respond to the assertion of wrongful post claim underwriting used to deny benefits to Child. Doc. 46-1 at 21.

prohibition of post claim underwriting. Specifically, Child cites Iowa Code § 514G.6[8] and Iowa Admin. Code §§ 191-39.7 and 191-39.32-39.

"Generally, interpretation of an insurance policy is a question of law." *Just v. Farmers Auto Ins. Ass'n*, 877 N.W.2d 467, 471 (Iowa 2016). To prevail on a breach of contract claim under Iowa law,[9] a plaintiff must prove:

> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that [plaintiff] has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998) (citing *Iowa-Illinois Gas & Elec. Co. v. Black & Veatch*, 497 N.W.2d 821, 825 (Iowa 1993)). A party breaches a contract when, without legal excuse, the party fails to perform any promise that forms a whole or a part of the contract. *Id.* (citing *Magnusson Agency v. Public Entity Nat'l Co. Midwest*, 560 N.W.2d 20, 27 (Iowa 1997)).

Because "insurance policies are contracts between the insurer and insured, [they] must be interpreted like other contracts, the objects being to ascertain the intent of the parties." *Talen v. Employers Mut. Cas. Co.*, 703 N.W.2d 395, 407 (Iowa 2005). "If the language of the policy is unambiguous, . . . that intent is determined by what the policy itself says." *Monroe County v. International Ins. Co.*, 609 N.W.2d 522, 525 (Iowa 2000). "An ambiguity exists when, after application of our relevant rules of interpretation, a genuine uncertainty results as to which of two or more meanings is proper." *Am. Fam. Mut. Ins. Co. v. Petersen*, 679 N.W.2d 571, 576 (Iowa 2004), *amended on denial of reh'g* (May 6, 2004).

---

[8] As Child notes, the statutes she relies on are from the 2003 Iowa Code, which was in effect when the Policy was purchased. These sections have since been repealed.

[9] Neither party contends that the law of any other state applies in this diversity action.

The breach Child alleges is based not on the terms of the Policy itself, but on an allegation that the Policy fails to comply with Iowa statutes in effect at the time, which are inherently part of the Policy.[10]  *See Lee v. Grinnell Mut. Reinsurance Co.*, 646 N.W.2d 403, 406 (Iowa 2002) (explaining that a statute that authorizes a contract of insurance "forms a basic part of the policy and is treated as if it had actually been written into the policy" (quoting *Tri-State Ins. Co. v. De Gooyer*, 379 N.W.2d 16, 17 (Iowa 1985))).  When there is a conflict between a policy provision and a statutory requirement, "the policy provision is ineffective and the statute controls."  *Id.*  Specifically, Child argues that Unum's intent was to use the Existing Loss provision to undermine the intent of the controlling statutes, which she argues is to protect insureds from the exclusion of existing losses where underwriting has been waived and to prohibit post claim underwriting to achieve a claim denial.[11]  Doc. 46-3 at 9.  She cites Iowa Admin. Code § 191-39.7, which states "[i]f a long-term care insurance policy or certificate contains any limitations with respect to preexisting conditions, such limitation shall appear as a separate paragraph of the policy or certificate and shall be labeled as "Preexisting Condition Limitations."  Additionally, she cites Iowa Code § 514G.7, which provides the following regarding Preexisting Conditions:

> a.     A long-term care insurance policy or certificate shall not use a definition of preexisting conditions which is more restrictive that the

---

[10] As Unum notes, Child's petition does not allege that the Policy violated any Iowa statute and the statute she cites does not create a private cause of action.  *See* Doc. 49 at 4, n.5 (citing *Seeman v. Liberty Mut. Ins. Co.*, 322 N.W.2d 35, (Iowa 1982)).  Child's factual allegations concern the way the Policy was presented as guaranteed issue during open enrollment as well as particular language in the Policy itself, all of which Child characterizes as a "trap" that Unum used to induce Child to pay full premiums and then allowed Unum to engage in post claim underwriting to deny benefits.  *See* Doc. 2 at 15-17.  Child acknowledges that her claim is not a "bona fide good faith insurance contract dispute" but that Unum's conduct in issuing this policy on guaranteed issue and then denying Child's claim based on an existing loss of ADLs on the effective date of coverage conflicts with Iowa insurance law and policy.

[11] Child makes other broad assertions to suggest Unum had a nefarious intent based on its marketing of LTC policies to seniors and the large number of LTC policies it has issued.  I find these allegations largely irrelevant to the issue at hand.

Case 6:22-cv-02071-LTS-MAR   Document 50   Filed 05/31/24   Page 11 of 23

following: *"Preexisting condition"* means the existence of symptoms which would cause an ordinarily prudent person to seek diagnosis, care, or treatment, or a condition for which medical advice or treatment was recommended or received from a provider of health care services within six months preceding the effective date of coverage of an insured person.

b.    A long-term care insurance policy shall not exclude coverage for a loss or confinement which is the result of a preexisting condition unless the loss or confinement begins within six months following the effective date of coverage of an insured person.

c.    The definition of *"preexisting condition"* does not prohibit either of the following:

(1)    An insurer from using an application form designed to elicit the complete health history of an applicant.

(2)    An insurer from underwriting in accordance with that insurer's established underwriting standards based on the answers on an application conforming with subparagraph (1).

Iowa Code § 514G.7 (2003). Child interprets this statute to mean that when an insurer solicits an application for LTC insurance and does not require or elicit the complete medical history of the applicant, the insurer cannot exclude a loss or confinement that existed on the date of coverage because doing so would require the insurer to ask medical questions, which it waived via guaranteed issue. *Id.* She asserts that failure to disclose that the Existing Loss provision would apply to guaranteed issue applicants violates the statutory disclosure requirements regarding preexisting conditions.

Unum disagrees that any of the statutes or regulations cited by Child apply here, noting that they require only that a policy "shall not exclude *coverage* for a loss or confinement *which is the result of a preexisting condition* unless the loss or confinement [from the pre-existing condition] begins within six months following the effective date of coverage." Iowa Code § 514G.7(3) (2003) (emphasis added by Unum). It explains that Child's loss was not the result of a preexisting condition because she did not have symptoms before the effective date of coverage that had not yet resulted in a loss and her

12

loss was not the result of a preexisting condition that began within six months after the effective date of coverage. Therefore, Unum argues this statute does not apply to Child's situation. Doc. 49 at 4. With regard to the placement of the Existing Loss provision in the Policy and Iowa Admin. Code § 191-39.7, Unum argues that it is not the same as a preexisting condition, which is a separate provision in the Policy and was not the basis on which Unum denied Child's claim. Doc. 49 at 3.

I agree with Unum that Child is conflating preexisting condition and existing loss. They are not synonymous. Section 514G.7(3) provides that if a loss occurs as a result of a preexisting condition at least six months after the effective date of coverage, the insurer cannot exclude coverage. The statute says nothing about covering losses that exist at or before the effective date of coverage. Nor does it require coverage for an existing loss in the absence of medical underwriting.

The fact that Unum issued the Policy without inquiring into Child's medical condition does not prohibit Unum from denying coverage for a *loss* that existed at the time of the effective date of coverage. This does not amount to post claim underwriting because Unum did not inquire into Child's medical history after Child filed her claim. Rather, Child disclosed the date of her loss of ADLs in association with her claim, which was long before her effective date of coverage. Unum had disclosed that coverage would not be provided for existing losses by including the disclaimer above the signature line in the Benefit Enrollment Form and in the Policy itself. As Unum notes, the regulations Child cites that prohibit post claim underwriting specifically state: "[a]ll applications for long-term care insurance policies or certificates *except those which are guaranteed issue* shall contain clear and unambiguous questions designed to ascertain the health condition of the applicant." Iowa Admin. Code 191-39.8(514G) (2003) (emphasis added). Because the Policy was issued under guaranteed issue, Unum was not required to perform medical underwriting and it did not perform post claim underwriting by asking the date of the loss. Unum did not deny Child's claim based on a preexisting condition, but on an existing loss. Thus, the Policy does not conflict with the regulations or statutes Child

13

relies on. As Unum notes, Child's argument is antithetical to the concept of insurance, which is to protect against risks of *future* losses, not known ones. Child's breach of contract claim based on Iowa statutes and regulations fails as a matter of law.

Child's other argument is based on the reasonable expectations doctrine. This doctrine "is a recognition that insurance policies are sold on the basis of the coverage they promise." *Boelman v. Grinnell Mut. Reinsurance Co.*, 826 N.W.2d 494, 505 (Iowa 2013) (quoting *Clark-Peterson Co. v. Indep. Ins. Assocs., Ltd.*, 492 N.W.2d 675, 679 (Iowa 1992)). The doctrine requires that an exclusion "(1) is bizarre or oppressive, (2) eviscerates terms explicitly agreed to, or (3) eliminates the dominant purpose of the transaction." *Id.* at 506. "Evidence of reasonable expectations comes from the underlying negotiations or the inferences arising from the circumstances of when the parties entered the policy." *Id.* "Only representations made by the insurer at the time of policy negotiation and issuance are relevant." *Id.* (citing *Vos v. Farm Bureau Life Ins. Co.*, 667 N.W.2d 36, 50 (Iowa 2003)).

Child contends she is entitled to benefits under this doctrine because, despite the Policy language, AEA 267 assured Child that the Existing Loss provision did not apply to her as someone who was enrolling under guaranteed issue. Child asserts that employees of AEA 267 made these assurances as agents of Unum. Under the Restatement (Third) of Agency:

> Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act.

Restatement (Third) of Agency § 101, at 17 (2006). "Whether a party serves as another's agent is ordinarily a question of fact." *Vroegh v. Iowa Dept. of Corrections*, 972 N.W.2d 686, 707 (Iowa 2022) (citing *Peak v. Adams*, 799 N.W.2d 535, 546 (Iowa 2011)). However, there must be substantial evidence to support the existence of an agency. *Walnut Hills Farms, Inc. v. Farmers Co-op Co. of Creston*, 244 N.W.2d 778, 780 (Iowa

14

1976). "A mere scintilla is not enough." *Id.* (citing *Martin v. Jaekel*, 188 N.W.2d 331, 333-34 (Iowa 1971)).

Under Iowa law, "[t]he party asserting an agency relationship must prove it exists by a preponderance of the evidence." *Frontier Leasing Corp. v. Links Engineering, LLC*, 781 N.W.2d 772, 776 (Iowa 2010). "Actual authority exi[s]ts if the principal has either expressly or by implication granted the agent the authority to act on the principal's behalf." *Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 102 (Iowa 2011) (citing *Grismore v. Consol. Prods. Co.*, 5 N.W.2d 646, 651 (1942)). Actual authority can be express (where there is direct evidence the principal granted authority to the agent) or implied (where circumstantial evidence proves the agent's authority). *Id.* "Apparent authority is authority the principal has knowingly permitted or held the agent out as possessing." *Id.* Apparent authority is decided based on the principal's communications to the third party, meaning it "must be determined by what the principal does, rather than by any acts of the agent." *Id.* (cleaned up).

Child argues that AEA 267 could make representations on behalf of Unum because Unum appointed AEA 267 as plan administrator, fiduciary and enrollment agent. Unum argues that none of these roles created an agency relationship. The Policy states: "Area Education Agency 267 is the Plan Administrator and named fiduciary of the Plan, with authority to delegate its duties." [12] Doc. 38-2 at 71. Those duties, as described in Unum's Plan Administrator Guide include: (1) provide employees with an enrollment kit on or prior to their eligibility date, (2) ensure employees return the completed forms by the due date and (3) review the Benefit Election Form to ensure (a) it was signed and dated, (b) the benefit choices were clearly identified, (c) the employee's address is correct, (d) the employee's date of birth was included, (e) the employee's social security number was

---

[12] As Unum notes, this statement is under a section titled "ERISA Additional Summary Plan Description Information." Doc. 38-2 at 71. Because AEA 267 is a governmental entity, ERISA does not apply. *See* 29 U.S.C. § 1003(b)(1) (providing the provisions of the subchapter shall not apply to any employee benefit plan if such plan is a governmental plan).

15

included, and (f) the employee's date of hire was included. Doc. 49-1 at 13 (citing Doc. 38-3 at 184). The Policy also states, in two separate places: "For all purposes of this Policy, the Policyholder acts on its own behalf or as the employees' agent. Under no circumstances, will the Policyholder be deemed to be Unum's agent." *Id.* at 35, 69.

The majority view on this issue is that an employer is not the agent of an insurance company that has issued a group policy, but an agent for the employees. *See Boseman v. Conn. Gen. Life Ins. Co.*, 301 U.S. 196, 204-05 (1937) ("When procuring the policy, obtaining applications of employees, taking payroll deduction orders, reporting changes in the insured group, paying premiums and generally in doing whatever may serve to obtain and keep the insurance in force, employers act not as agents of the insurer but for their employees or for themselves."); *Hayes v. Lincoln Gen. Ins. Co.*, 899 F.2d 684, 686 (7th Cir. 1990) ("According to Indiana law, when an employer acts as a middle man between an insurance company and its employees, the employer is the agent of the employees, not the insurance carrier."); *Lamb v. Conn. Gen. Life Ins.*, 509 F. Supp. 560, 560 n.2 (D.N.J. 1980) ("The majority rule is that the group policyholder acts for itself and on behalf of the members of the group; it is not the agent of the insurance carrier. New Jersey adheres to the majority rule."); *Hanaieff v. Equitable Life Assur. Soc. of U.S.*, 92 A.2d 202, 204 (Penn. 1952) ("while it is true that there is a diversity of opinion among the several jurisdictions as to whether, in the case of such group insurance policies, the employer occupies the role of agent of the employees or of the insurer, in our own State, as in the Supreme Court of the United States, this question has been definitely resolved against plaintiff's contention"); *Pepkowski v. Life of Indiana Ins. Co.*, 535 N.E.2d 1164, 1167 (Ind. 1989) (fact that employer provided application form and benefits booklet, assisted plaintiff in completing the form and mailed it to insurer, was not contacted by any other insurance agent regarding her coverage and insurer accepted application was insufficient to show genuine issue for trial as to whether employer had authority to bind insurer); *Hendrix v. Republic Nat. Life Ins. Co.*, 606 S.W.2d 601, 603 (Ark. Ct. App. 1980) ("We hold that because Arkansas law contemplates that a group

16

insurance policy is a contract between the employer and the insurer and not a contract between the employee and insurer, the employer is not to be regarded as the agent of the insurer for the purpose of collecting insurance premiums from the employee."); 1A Couch on Ins. § 8.13, n. 10 (citing cases applying majority rule).

Child cites one Iowa case addressing this issue, which recognizes that the issue is fact dependent and that "no hard and fast rule should be adopted as to whether agency principles always apply." *Davis v. Ottumwa Young Men's Christian Ass'n*, 438 N.W.2d 10, 16 (Iowa 1989). The Court stated:

> The general rule appears to be that 'neither an employer nor the employer's agent is an agent of an insurance company, or clothed with any power to waive any of the conditions of a group policy of insurance covering the employees of such employer.' 44 Am.Jur.2d *Insurance* § 1851, at 844 (1982) (footnote omitted). However, 'it has been stated broadly that an employer as the administrator of an employees' group insurance policy is the agent of the insurer, to whom any omission of duty by the employer in its administration of the policy should be attributable." *Id.* at 845 (footnote omitted).

*Id.* at 16. Here, the issue concerns conditions of the Policy and not its administration – such as providing applications, collecting premiums or any of the specific tasks assigned to plan administrator as described in the Plan Administrator Guide for AEA 267. Doc. 38-3 at 187. Child has come forward with no other evidence from which a reasonable jury could conclude AEA 267 was acting as Unum's agent. As such, Child cannot sustain her breach of contract or reasonable expectations claim on a theory that AEA 267 was acting as Unum's agent in making representations to Child regarding the terms and conditions of the Policy.

With regard to any representations by Unum, Child does not appear to rely on any representations made during her calls to Unum. Unum spent two pages of its brief discussing why these calls did not give Child a reasonable expectation that her existing ADL loss would be covered. *See* Doc. 37-1 at 12-14. In response, Child makes no argument that there is a fact issue as to whether any such calls created a reasonable

17

expectation. Indeed, all she says on the matter is "whether the jury believes Ms. Child called Unum is a red herring because the AEA properly advised the Plaintiff that her preexisting condition would not bar a claim for benefits under the policy." *See* Doc. 46-3 at 14-16. As such, I consider Child to have waived any argument that the reasonable expectations doctrine should apply based on representations by Unum during her alleged calls. *See, e.g., Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("failure to oppose a basis for summary judgment constitutes waiver of that argument."). Child has not demonstrated a genuine issue of material fact on the reasonable expectations doctrine.

In sum, the claim denial was consistent with the Policy and with the Iowa statutes and regulations that apply to LTC policies. Nor has Child demonstrated a genuine issue of material fact on the reasonable expectations doctrine based on representations from either AEA 267 or Unum. Child's breach of contract claim fails as a matter of law.

### 2. *Count II – Bad Faith*

Unum argues that Child's bad faith claim fails as a matter of law because her claim under the Policy is at least fairly debatable and there is no evidence that Unum knew or had reason to know its denial was without reasonable basis. Like Child's breach of contract claim, Unum asserts that the Policy language is clear and unambiguous and that its decision on Child's claim was consistent with such language as well as any Iowa statutes that applied to LTC policies at the time. Child argues that Iowa statutes prohibit (1) the exclusion of losses that exist on the effective date of coverage and (2) post claim underwriting where underwriting is either insufficient or altogether waived. She also argues that Unum failed to investigate the representations made by the AEA to Child, despite instructions in its claim manual.

To prevail on a first party bad faith insurance claim pursuant to Iowa law, a plaintiff must show "(1) that the insurer had no reasonable basis for denying benefits under the policy and, (2) the insurer knew, or had reason to know, that its denial was

18

without basis." *Thorton v. American Interstate Insurance Company*, 897 N.W.2d 445, 461-62 (Iowa 2017) (quoting *United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 657 (Iowa 2002)). The first element is objective and the second element is subjective. *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005).

With regard to the first element, "[a] reasonable basis exists for denial of policy benefits if the insured's claim is fairly debatable either on a matter of fact or law." *Bellville*, 702 N.W.2d at 473. This issue may be decided as a matter of law. *Id.* A claim is "fairly debatable when it is open to dispute on any logical basis . . . . Stated another way, if reasonable minds can differ on the coverage-determining facts or law, then the claim is fairly debatable." *Bellville*, 702 N.W.2d at 473. Because the first element's focus is on whether there was a debatable issue, it is not dispositive if the insurer's position was ultimately incorrect. *Id.* Instead, the dispositive question is whether a fairly debatable claim existed. *Id.* When "an objectively reasonable basis for denial of a claim *actually exists*, the insurer cannot be held liable for bad faith as a matter of law." *Id.* at 474 (emphasis in original). Courts do not weigh the evidence an insurance company considered; they determine simply whether evidence existed to justify the company's denial of the policyholder's claim. *Id.*

Even if a policyholder shows that the insurance company lacked an objective reasonable basis to deny the claim, bad faith liability attaches only if the insurance company "knew or should have known that the basis for denying its insured's claim was unreasonable." *Id.* "An insurer's negligent or sub-par investigation or evaluation of a claim is relevant to the fact finder's determination of whether the insurer should have known its denial lacked a reasonable basis." *Id.* However, an improper investigation alone "is not sufficient cause for recovery if the insurer in fact has an objectively reasonable basis for denying the claim." *Id.* (cleaned up).

Because Child's breach of contract claim fails as a matter of law, her claim of bad faith also fails, as there is no genuine issue of material fact concerning whether Unum had a reasonable basis for denying Child's claim. Indeed, Unum's decision was

19

consistent with the terms of the Policy and with the Iowa statutes and regulations governing LTC policies. Likewise, there is also no evidence that Unum knew or had reason to know its decision was without reasonable basis. Because there are no facts supporting that AEA 267 had authority to act as Unum's agent outside of its administration duties, Unum's failure to contact AEA 267 in investigating the claim is of no consequence. Unum is entitled to summary judgment on Child's bad faith claim.

### 3. Count III – Fraudulent Misrepresentation

Unum argues it is entitled to summary judgment on Child's claim of fraudulent misrepresentation based on alleged conversations with her employer and Unum representatives regarding her eligibility for coverage. It argues that Unum cannot be bound by any representations made by Child's employer and that Child's description of any representation from Unum's customer care representatives fails to rise to the level of a misrepresentation. Finally, it argues there is no evidence that Child justifiably relied on any representations of coverage or evidence of scienter or intent to deceive.

Child cites the following actions as evidence of fraud: (1) Unum induced AEA employees to purchase policies by offering guaranteed issue coverage and representing that preexisting losses were not excluded under the policy; (2) Unum delivered policies and confirmed coverage; (3) Unum charged and accepted premium payments; (4) Unum purposely concealed its intention to post claim underwrite the guaranteed issue group; (5) Unum knowingly violated Iowa law by excluding preexisting losses and (6) Unum kept the money it collected for coverage it says never existed. See Doc. 46-3 at 20-21. Under Iowa law:

> To establish a claim for fraudulent misrepresentation, [a plaintiff] has the burden of proving each of the following elements: "(1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, and (7) resulting injury and damage." These elements must be established by "a preponderance of clear, satisfactory, and convincing proof."

*Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc.*, 783 N.W.2d. 684, 687 (Iowa 2010) (quoting *Lloyd v. Drake Univ.*, 686 N.W.2d 225, 233 (Iowa 2004)). A claim of fraudulent nondisclosure is analyzed under a similar framework, with the nondisclosure of a material fact serving as the "representation" element. *See Anderson v. Boeke*, 491 N.W.2d 182, 188 (Iowa 1992) (a representation "need not be an affirmative misstatement," as fraud "can also arise from the failure to disclose material facts"); *Schaller Telephone Co. v. Golden Sky Systems, Inc.*, 298 F.3d 736, 740 (8th Cir. 2002) (noting that "Iowa law recognizes a cause of action for fraudulent misrepresentation based on nondisclosure of material facts").

Child's main argument in support of this claim is that Unum failed to disclose that "'coverage' was never intended to be vested until after a claim was made and then through post claim underwriting determine whether the insured had an 'existing' loss of ADLs on the effective date of coverage."[13] Doc. 46-3 at 21. It is undisputed that the "Existing Loss" provision was in the Benefit Enrollment Form and that Child saw it. *See* Doc. 46-1 at 8, 14. As such, Child's claim of fraudulent misrepresentation based on a failure by Unum to disclose material facts is not supported by the evidence. Also, as discussed above, a denial based on the Existing Loss provision is not the same as excluding a

_____

[13] To the extent Child also relies on alleged representations by Unum and AEA 267 employees that under guaranteed issue the Existing Loss provision did not apply to her, that claim fails as a matter of law. With regard to representations by her employer, these statements cannot bind Unum for the reasons stated above. *See supra* Section V(A)(1). With regard to representations by Unum, Child's resistance does not address these representations, except for a conclusory statement that "it is undisputed that the Plaintiff relied on the representations of Unum and the AEA that under guaranteed issue, her preexisting condition would not bar her claim for benefits." Doc. 46-3 at 22. To the extent she has not waived this argument, *see Satcher*, 558 F.3d at 735, she nevertheless has failed to demonstrate a genuine issue of material fact on at least the elements of scienter and intent to deceive. *See Van Sickle Const. Co.*, 783 N.W.2d at 688 ("Scienter and intent to deceive may be shown when the speaker has actual knowledge of the falsity of his representations or speaks in reckless disregard of whether those representations are true or false."); *Hlubek v. Pelecky*, 701 N.W.2d 93, 96 (Iowa 2005) ("Speculation is not sufficient to generate a genuine issue of fact."). Notably, a representation that a "preexisting condition" would not bar a claim would not be false under the Policy language.

preexisting condition. Applying the Existing Loss provision does not amount to post claim underwriting, nor does it violate the Iowa statutes or regulations cited by Child concerning LTC policies. Unum is entitled to summary judgment on Child's fraudulent misrepresentation claim.

### 4. Punitive Damages

Because Child's claims of bad faith and fraudulent misrepresentation fail as a matter of law, so too does her claim for punitive damages. *See Higgins v. Blue Cross of Western Iowa and South Dakota*, 319 N.W.2d 232, 235 (Iowa 1982) ("Punitive damages may not be recovered for a mere breach of contract; it is only when the breach also constitutes an independent tort, or other illegal or wrongful act, that punitive damages become a possibility.").

### B. Child's Motion for Partial Summary Judgment

Because Unum is entitled to summary judgment on each of Child's claims, Child's motion for summary judgment on the limited issues of coverage and wrongful post-claim underwriting must be denied.

### VI. CONCLUSION

For the reasons stated herein:

1.    Unum's motion (Doc. 37) for summary judgment is **granted in its entirety**.

2.    Child's motion (Doc. 38) for partial summary judgment is **denied.**

3.    This action is hereby **dismissed** and judgment **shall enter** in favor of Unum against Child

4.    The trial of this case, currently scheduled to begin August 5, 2024, is hereby **canceled**.

5.    The Clerk of Court shall **close this case**.

22

**IT IS SO ORDERED** this 31st day of May, 2024.

_____
Leonard T. Strand
United States District Judge